## CASTLEBERRY *VS* THE ADM'R OF PEIRCE.

1. Where the vendor of lands, chooses, after the death of the vendee, to rescind the contract, an action may well be maintained by the vendee's representative, to recover money paid by the vendee, in his life-time; in part consideration of the contract.

2. Thus, where one, having contracted for the purchase of lands, gave his notes therefor, payable to the vendor, and received from the latter, a bond, conditioned for the execution of titles, when the last payment should be made; and subsequently made partial payments, and died; and afterwards, before letters were granted on the vendee's estate, the vendor entered upon the land, and took possession, and conveyed to a stranger; it was held, that the administrator of the vendee was entitled to an action, for the monies paid by the latter, in his life-time, in part consideration of the purchase.

Error to the Circuit Court of St. Clair.

This was an action of assumpsit, by John S. Edwards, the administrator of the goods and chattels, rights and credits, which were of Aaron Peirce, deceased, against Aaron Castleberry.

The declaration was in the usual form, and con-

tained divers counts—for work and labor, care and diligence, by the said Peirce, in his life-time, done and performed, in and about the business of the said defendant, at his special instance and request; and for goods, wares and merchandise, sold and delivered; money lent and advanced; money laid out and expended; and money had and received.

A trial was had under the pleas of non-assumpsit, payment, set-off, and the statute of limitations; and a verdict and judgment entered for the plaintiff.

A new trial having been granted, verdict and judgment were again entered for the plaintiff, from which the defendant took a writ of error.

A bill of exceptions shows, that on the trial of this cause, it was proved, that the plaintiff's intestate, on the 20th day of March, 1824, purchased of the defendant a tract of land, and executed two notes, of seven hundred and fifty dollars each, payable to the defendant, for the purchase money—one due twelve months after date, the other due on the 20th day of March, 1826; and that the defendant gave to the intestate, a bond, conditioned to make titles to the land on the said 20th day of March, 1826, provided the purchase money was then all paid. That, previous to the said last mentioned day, the intestate had made to the defendant large payments, on account of said land; but not the whole amount of the purchase money. That the intestate took possession, and held it until his death, which was about the 20th July, 1826. That shortly after the death of the intestate, and before letters of administration were granted, the defendant entered upon, and took possession

of the premises, and, in April, 1830, sold them to one Gilliland.

It, also, appeared, that since the last continuance, the said defendant had agreed with Gilliland, to take back the title, if it should become neecessary, to convey to the heirs of the intestate.

The Court charged the jury that the defendant, after the death of the intestate, had a right to rescind the contract, provided the purchase money had not all been paid, at the time he took possession, after the death of the intestate; and his taking possession and selling the same, might be considered as a rescission of the contract. The Court further charged the jury, that if the contract was rescinded after the death of the intestate, the plaintiff was entitled to recover back what had been paid, on account of the purchase. The Court further instructed the jury, that the non-payment of the notes by the intestate, at the time the last fell due—the same remaining unpaid at the time the defendant took possession of the premises, after the death of the intestate— the defendant had a right to consider the contract forfeited, and rescinded; and that after such rescission, unless the plaintiff was entitled to recover in this action, both the administrator and the heirs of the intestate, would be remediless; that neither could sustain an action on the bond, or a suit for a specific performance.

Proof was offered by the plaintiff, to shew that administration was first granted in the month of February, 1827; that the heirs were minors, and that the administrator applied to Castleberry for a settlement; that he refused, and denied having received

any thing, on account of the land. It was further proved by the plaintiff, that oxen, cows, hogs, &c., sold by the defendant, to the intestate, in his life-time, were, after his death, taken into possession by the defendant, and the children of the intestate were left without property.

To the several charges of the Court the defendant excepted.

The plaintiff in error now came and assigned for error—

*First*—The Court erred, as stated in the bill of exceptions.

*Secondly*—The Court erred, in giving the charge set out, in the bill of exceptions.

*Moody* and *Goldthwaite*, for the plaintiff in error.
*Peck* and *Shortridge*, contra.

SAFFOLD, J.—This was an action of assumpsit, brought in the Circuit Court of St. Clair County, by the present defendant, against the plaintiff in error.

The declaration contains the various counts, for work and labor, goods, wares and merchandise; and the common counts, for money had and received, and for money paid, laid out and expended, &c.

A bill of exceptions, taken on the trial shows, that Peirce, in his life-time, in March, 1824, purchased of Castleberry a tract of land, and executed two notes for the purchase money, of seven hundred and fifty dollars each, payable to Castleberry—one fell due twelve months after date, the other in March, 1826; also, that he gave to Peirce, a bond, conditioned to

5 s & p. 20

make titles to the land on the said last mentioned day; provided all the purchase money should then be paid. That, previous to the said last mentioned day, the intestate had made to the defendant large payments, on account of said land, but not the whole amount. That the intestate took and retained possession, until his death, which happened in July, 1826. That shortly after his death, and before letters of administration were granted, Castleberry entered and took possession of the premises, and, in April, 1830, sold them to one Gilliland.

It also, appeared, that, after the last continuance, prior to the trial, the defendant below, had agreed with Gilliland, to take back the title, if necessary to convey to the heirs of the intestate.

Evidence had also been offered, by the plaintiff below, that the letters of administration had been granted in February, 1827: that the heirs were minors: that the administrator applied to Castleberry for a settlement; that he refused, and denied having received any part of the purchase money.

It was further proved, that oxen, cows, hogs, &c., sold by Castleberry to the intestate, in his life-time, were, after the death of the latter, taken into possession by the former, and that "the children of the intestate were left without property."

On this evidence, the Court charged the jury, that the defendant, after the death of the intestate, had a right to rescind the contract, if the purchase money was not all paid, at the time he took possession, after the death of the intestate; and that his taking possession, and selling the same, might be considered a rescission of the contract.

The Court further charged, that if the contract was rescinded, after the death of the intestate, his administrator was entitled to recover back the money, which had been paid on account of the purchase; and that, if the contract was so forfeited and rescinded, a recovery in this action, was the only remedy left to either the administrator, or heirs of the deceased; that neither could sustain an action on the bond, or any suit for a specific performance.

In giving the instructions, as above stated, the Circuit Court is charged to have erred.

The Circuit Court seems to have proceeded on the principle, that the contract contained dependent stipulations; at least, that the objection, on the part of Castleberry, to make a title to the land, depended on the payment of the money, by the intestate, on the day appointed; that this was a condition precedent, and if not complied with, Castleberry was thereby discharged from all obligation, and could rescind the bargain; yet, that the consequence of such rescission would be to create a liability on himself, to refund any amount he had received in part payment.

Whether the principle adopted by the Court would have been strictly correct, if the controversy had arisen in a different form, is not material on the present occasion.

The accuracy of the instructions is to be determined, with reference to the particular question then presented. They were, in substance, that the administrator of the intestate had a right, under the circumstances hypothetically stated, to recover back the money paid. The contract was, that the purchase money should fall due by two instalments; and,

provided the whole was paid by the last given day, the title should be then made. There was no agreement for a re-entry by the vendor, in the event of a failure to pay, unless the right was implied, as the means of rescinding the contract.

But, as the vendor chose to claim and exercise this right, he surely can have no ground, on which to object to the alleged rescission, unless he would still remain responsible to the heirs, for a specific performance: his course, however, has evinced the contrary disposition; and this liability can not exist, if the circumstances created the right of rescission—for the re-entry was a sufficient indication, and execution of the intention to rescind.

If, *stricti juris*, he could only rescind on the repayment of the money received; yet, as he claimed the privilege, without, and has received the benefit, and, as the adverse party has acquiesced in it, being willing to receive the re-payment now, the vendor is estopped from insisting, that his re-entry and rescission were unauthorised.

The authorities clearly recognise the doctrine, that where two acts are to be done *at the same time*, as where A covenants or agrees to convey an estate, or to deliver goods to B, on a named day, or generally, and, in consideration thereof, B covenants to pay A a sum of money, on the same day, or generally, neither can maintain an action, without showing a performance of, or an offer to perform, or, at least, a readiness to perform on his part—though it is not certain which of them was obliged to do the first act; and this rule applies particularly to contracts of sale.[a]

[a] 1 Chit. Pl. 315; 1 Saun 320, note 4; 2 Ib. 352, n. 3, and 108, n. 3; 1 East. 203; 8 T.R 366.

The interest in question, whether it consist of the land, under a specific performance, or of the money to be recovered back in this action, must inure to the benefit of the same persons—to the heirs of the intestate generally, if there be no creditors; or, if creditors, then to them. In these respects, our law, and the reason of it, is essentially different from the principles of the common law.

If it were possible to raise the money, out of the estate of the intestate, to complete the purchase, (admitting the right of the heirs to do so,) it could only be raised through the administrator; and he has sufficiently evinced the opposite intention.

With us, where the heirs generally of the deceased, have an equal interest in the contracts for land titles, as well as others, the administrator may safely exercise a greater latitude of discretion, whether to insist on a specific performance, or to consent to a rescission, than can be tolerated in England, where the eldest mail heir has the exclusive interest if the contract be performed. And, as a general rule, the right to insist on a subsequent performance of a contract, involving dependent covenants, can only exist where, from the nature of the subject, the time of performance is *not of the essence of the contract*; but the time for the payment of the money, has uniformly been considered a substantial and material part of every contract.

Besides, the record shows, that the heirs were minors, and were left without property, from which it may be inferred, that they had neither the ability or disposition to complete the payment—especially af-

ter the re-entry, and supposed rescission, by the vendor.

We, therefore, unanimously think the judgment of the Circuit Court must be affirmed.